UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GUILLERMO LAGEYRE -
RAVELO,

        Petitioner,

    v.

ACTING DIRECTOR TODD
LYONS, U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT;
FIELD OFFICE DIR. GARRETT
RIPA, U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT;
SECRETARY KRISTI NOEM, U.S.
DEPARTMENT OF HOMELAND
SECURITY; U.S. ATTY GENERAL
PAM BONDI, EXEC. ASST.
DIRECTOR MARCOS CHARLES,
ENFORCEMENT AND REMOVAL
OPERATIONS,

        Respondents.

_____/

Case No. 2:25-cv-1171-KCD-DNF

## **ORDER**

This case presents a straightforward question regarding the Government's statutory authority to detain a noncitizen subject to a final order of removal following the revocation of his supervised release. Petitioner Guillermo Lageyre-Ravelo is a 71-year-old Cuban national who was paroled into the United States. (Doc. 1 ¶ 3.) After he lost his permanent residency due to criminal convictions, an immigration judge ordered his removal. (*Id.* ¶ 5.)

Because the Government could not remove him at that time, U.S. Immigration and Customs Enforcement ("ICE") placed him on an Order of Supervision. (*Id.* ¶ 7.) For over a decade, Ravelo allegedly lived in the community and complied with the conditions of his release. (*Id.*)

Then, in October 2025, ICE abruptly revoked Ravelo's supervision and re-detained him. (*Id.* ¶ 8.) This petition for writ of habeas corpus followed. Ravelo argues that his re-detention violates due process, the Administrative Procedure Act, and the Supreme Court's mandate in *Zadvydas v. Davis*, 533 U.S. 678 (2001).[1]

The Government meets the petition with two arguments. (Doc. 5.) As a threshold matter, it argues that this Court lacks subject-matter jurisdiction to review the claims. (*Id.* at 2-6.) On the merits, the Government contends that the detention is statutorily and constitutionally sound because Ravelo's removal to Mexico is reasonably foreseeable, and the presumptively valid six-month detention period from *Zadvydas* has not expired. (*Id.* at 6-11.)

The Court is satisfied it has jurisdiction. But on the merits, the Government is right. The petition is therefore **DENIED**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Legal Standard

At its core, the writ of habeas corpus operates as the historic and fundamental remedy for unlawful executive detention. *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Under 28 U.S.C. § 2241, federal courts possess the statutory authority to issue the writ whenever an individual demonstrates that they are being held in custody in violation of the Constitution or federal law. This judicial power extends squarely to challenges involving civil immigration detention. *See Demore v. Kim*, 538 U.S. 510, 513 (2003). As the Supreme Court has explained, habeas corpus ensures the Government does not lock individuals away without a valid legal basis, serving as the essential mechanism to test the boundaries of executive restraint. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008).

## II. Discussion

### A. Jurisdiction

A court cannot grant habeas relief if it lacks the statutory power to entertain the petition in the first place. Pointing to the Immigration and Nationality Act ("INA"), the Government argues that subject-matter jurisdiction is absent here. (Doc. 5 at 3.) Specifically, it relies on 8 U.S.C. §§ 1252(g) and 1252(b)(9)—provisions designed to strip district courts of jurisdiction over claims arising from the execution of removal orders. In the Government's view, because Ravelo was detained to carry out his final

3

removal order, his habeas petition is merely an impermissible attempt to halt that ongoing legal process. (*Id.* at 3-5.) The Court addresses each of these jurisdictional statutes in turn.

### i. 8 U.S.C. § 1252(g)

The Government first turns to § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Id.* This provision specifically "limits habeas corpus jurisdiction, including under § 2241." *Islas v. DHS/ICE Off. of Chief Couns. - ATD*, No. CV 323-002, 2023 WL 2761710, at *1 (S.D. Ga. Jan. 23, 2023); *see also Wallace v. Sec'y, U.S. Dep't of Homeland Sec.*, 616 F. App'x 958, 961 (11th Cir. 2015).

But § 1252(g) does not cover "all deportation-related claims." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 478 (1999). It has a far narrower reach. It forecloses judicial review of three discrete actions by the Attorney General: her "decision or action to commence proceedings, adjudicate cases, or execute removal orders." *Id.* at 482. As the Supreme Court recently reiterated, § 1252(g) does not "sweep in any claim that can technically be said to arise from the three listed actions." *Jennings v.*

4

*Rodriguez*, 583 U.S. 281, 294 (2018). Instead, it "refer[s] to just those three specific actions themselves." *Id.*

Deciding whether a claim falls under § 1252(g) is not always easy. That is because nearly all grievances brought in this context have some connection to the discrete acts of commencing proceedings, adjudicating cases, or executing removal orders. Indeed, any issue an alien encounters during removal arises, in a but-for sense, from the Attorney General's decision to commence the case. *See Kong v. United States*, 62 F.4th 608, 613 (1st Cir. 2023). So when "asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The Government focuses on detention. It argues that the action challenged here is the Attorney General's detention of Ravelo. (Doc. 5 at 4.) And jailing an alien to enforce a removal order "falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review." (*Id.* (quoting *Hamama v. Adducci*, 912 F.3d 869, 874 (6th Cir. 2018).)

The Court cannot agree. Ravelo is not attacking the Attorney General's underlying discretionary decision to detain him. Rather, he is challenging the Government's failure to follow the legal and regulatory procedures that must flow from that decision. That distinction makes all the difference. Section

5

1252(g) is designed to shield a narrow set of discretionary executive choices. *Reno*, 525 U.S. at 482. It does not, however, write the Government a blank check to ignore due process or its own administrative rules once that choice is made. A challenge to the procedures governing an alien's detention is entirely separate from a challenge to the decision to execute a removal order or detain him in the first place. The latter is shielded, while the former remains squarely subject to judicial review. *See Jennings*, 583 U.S. at 294-95.

Ravelo asks only that this Court police the statutory and constitutional bounds of his confinement. He challenges the flawed paperwork he received, the procedures used to revoke his thirteen-year release, and the allegedly indefinite nature of his new detention. He does not seek to cancel his removal order or halt his ultimate deportation. Because he challenges the legal framework of his detention rather than the underlying decision to execute his removal, § 1252(g) poses no obstacle to judicial review. *See, e.g.*, *Navarro v. Bondi*, No. 8:25-CV-3213-KKM-NHA, 2025 WL 3275944, at *2 (M.D. Fla. Nov. 25, 2025).

One last point. If the Government's reading were correct, § 1252(g) would act as a jurisdictional black hole for anyone held in immigration custody. Under its theory, so long as the executive branch points to a final removal order, it could hold a noncitizen indefinitely, ignore its own regulations, or subject the detainee to unconstitutional conditions, all while

insisting that federal courts are powerless to intervene. The Supreme Court has never read § 1252(g) so broadly. *See also Arroyo v. Diaz*, No. 25-62676-CIV, 2026 WL 279656, at *4 (S.D. Fla. Feb. 2, 2026), *Banega v. Noem*, No. 2:25-CV-1152-JES-DNF, 2026 WL 234042, at *2 (M.D. Fla. Jan. 29, 2026).

### ii. 8 U.S.C. § 1252(b)(9)

Next up is the so-called "zipper clause," which "bars review of claims arising from 'action[s]' or 'proceeding[s] brought to remove an alien.'" *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1896, (2020) (quoting 8 U.S.C. § 1252(b)(9)). We need not spend long here. The Eleventh Circuit has held "that the zipper clause only affects cases that involve[] review of an order of removal." *Canal A Media Holding, LLC*, 964 F.3d at 1257. It "is not intended to cut off claims that have a tangential relationship with pending removal proceedings." *Id.* Ravelo is not challenging a removal order. So "the Government's reliance on § 1252(b)(9) is misplaced." *Fernandez-Garcia v. U.S. Att'y Gen.*, No. 1-20-CV-23599-UU, 2021 WL 8821923, at *5 (S.D. Fla. Apr. 15, 2021).

### B. Count I—Procedural Due Process

Turning to the merits, Ravelo first brings a procedural due process challenge. (Doc. 1 at 14.) He points to a series of apparent administrative blunders surrounding his return to custody. The initial Notice of Revocation he received was inexplicably dated eleven days before his actual arrest, and

the form itself bore the name and alien number of a completely different individual. (*Id.* at 15-18.) According to Ravelo, these mistakes deprived him of fair notice and a meaningful opportunity to contest his sudden move to a detention cell.

The Government's paperwork was, without a doubt, sloppy. But a bureaucratic typo does not automatically unlock the jailhouse doors. *See Munaf*, 553 U.S. at 693 ("The habeas statute provides only that a writ of habeas corpus 'may be granted,' and directs federal courts to 'dispose of [habeas petitions] as law and justice require.'"). The Government has since fixed the paperwork and provided Ravelo with the correct, updated notice. (Doc. 5-1.) Habeas relief is not a retroactive reward for a scrivener's error that has already been corrected. Because the paperwork problems are resolved and Ravelo now has the notice he needs, the Court declines to order his release simply because the agency fumbled the initial handoff. *See, e.g.*, *Priva v. U.S. Att'y Gen.*, 34 F.4th 946, 955 (11th Cir. 2022); *Karki v. Raycraft*, No. 2:25-CV-13186, 2025 WL 3516782, at *6 (E.D. Mich. Dec. 8, 2025).

### C. Count II—Accardi Doctrine

The Accardi doctrine—derived from *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)—"stands for the unremarkable proposition that an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). "It goes without saying that

ICE, like all government agencies, must follow its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025). "[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984).

Ravelo's first *Accardi* grievance targets the signature line on the notice revoking his supervised release. He contends the notice is void because it was signed by a subordinate officer rather than one of the specific, high-ranking officials listed in 8 C.F.R. § 241.4(l)(2). *Cf. Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025) ("[U]nder § 241.4(l)(2), the officials with the power to revoke release after making certain findings include field office directors and any other officials delegated the function or authority ... for a particular geographic district, region, or area."). But that argument ignores how the administrative state actually works. As a matter of basic regulatory mechanics, immigration officials possess broad authority to delegate their operational duties to subordinate officers. *See* 8 C.F.R. § 2.1 (expressly authorizing the delegation and redelegation of agency authority). The Court will not endorse the sweeping proposition that a Field Office Director must personally sign every routine notice generated within their jurisdiction to make it legally effective. *See Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 382 (D. Md. 2025), *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *7 (S.D. Fla. Aug. 8, 2025).

But even if we accept that the signatures here technically fall short of ICE's rulebook, habeas relief is not the necessary result. Not every misstep will compel reversal of agency action, much less release of someone in custody. "Accardi teaches that some regulatory violations are so serious as to be reversible error without a showing of prejudice," but the Supreme Court has exempted "from this principle those procedural regulations adopted for the orderly transaction of business." *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 178-79 (3d Cir. 2010). So "when a violation of immigration regulations implicates less than fundamental rights," a showing of prejudice is required to warrant judicial intervention. *Id.* at 179. "[F]or a regulation to protect a fundamental right, a violation must be a structural error that necessarily makes proceedings fundamentally unfair." *Aquino v. Att'y Gen.*, 53 F.4th 761, 766 (3d Cir. 2022).

To be sure, noncitizens present in the United States must be afforded certain procedural due process protections before they are detained or removed. But the signature requirement Ravelo points to does not undermine those fundamental rights in any way. Who exactly signs a revocation notice is merely a procedural safeguard, not a constitutional bulwark erected to protect a noncitizen's due process rights. Regardless of whose name sits on the signature line, the noncitizen retains the core constitutional guarantee: the opportunity to be heard. *See Sharma v. Drug Enf't Agency*, 511 F. App'x

10

898, 902 (11th Cir. 2013) ("[E]ven where a governmental entity fails to follow its own regulations providing for procedural safeguards, it is not a denial of due process if the individual was provided with adequate notice such that his rights were not prejudiced.").

Because no fundamental constitutional right is at play, this alleged regulatory misstep only matters if Ravelo can show it actually prejudiced him. *See United States v. Raya-Vaca*, 771 F.3d 1195, 1206 (9th Cir. 2014). But he has not done that. In fact, he has not even tried. Ravelo offers no argument—let alone evidence—that he was somehow harmed or deprived of fair notice just because a subordinate officer, rather than a Field Office Director, wielded the pen. Under 8 U.S.C. § 1231, the Government has the statutory authority to detain and remove noncitizens, like Ravelo, who have a final order of removal. Such authority is not invalidated by ICE's failure to follow its own regulations, where those regulations are seemingly procedural and not promulgated to ensure the alien's due process rights. *See, e.g., Van v. Oddo*, No. 3:25-CV-00322, 2025 WL 3492736, at *4 (W.D. Pa. Dec. 5, 2025).

Ravelo's second *Accardi* claim fares no better. (Doc. 1 at 21.) He complains that ICE skimped on its explanation for revoking his release, arguing that the notice lacked a "reasoned basis" because it simply stated there was now a "significant likelihood of removal in the reasonably foreseeable future." (*Id.* ¶ 73.) But Ravelo is reading a requirement into the

regulation that simply isn't there. Section 241.4(l)(1) requires ICE to notify the individual of the *reasons* for the revocation. 8 C.F.R. § 241.4(l)(1). It does not demand that the agency pen a comprehensive judicial opinion detailing the evidentiary basis for that conclusion. *See Tanha v. Warden, Baltimore Det. Facility*, No. 1:25-CV-02121-JRR, 2025 WL 2062181, at *5 (D. Md. July 22, 2025).

An order of supervision is not a permanent entitlement. The regulations expressly allow ICE to revoke that release in its discretion when circumstances change. *See* 8 C.F.R. § 241.4(l). Because the ultimate decision rests firmly in the Government's hands, the procedural requirement to provide "reasons" under § 241.4(l) is simply a notice requirement—not a demand for a full-blown evidentiary ruling. ICE cleared that low bar by telling Ravelo exactly what triggered the discretionary call: his removal was suddenly on the horizon. His attempt to read a heightened pleading standard into a discretionary regulatory framework simply does not work. *See Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 1895479, at *5 (S.D. Fla. July 8, 2025).

Finally, Ravelo contends that by leaving him in custody for 47 days without an informal interview, ICE failed to act "promptly" as required by 8 C.F.R. § 241.4(l). (Doc. 1 at 22.) The difficulty here is twofold. First, the interview actually happened: ICE conducted it in December. (Doc. 5-1 at 13.)

Second, it is far from obvious that § 241.4(l)(1) even governs Ravelo's situation. That regulation generally lays out the procedural playbook for when a noncitizen violates the conditions of their supervised release. But ICE did not revoke Ravelo's release because he broke a rule. It brought him back into custody because his actual removal had suddenly become significantly likely. Whether § 241.4(l)(1) dictates the procedures for that kind of operational revocation is debatable. *Compare Barrios*, 2025 WL 2280485, at *6, *with Ceesay*, 781 F. Supp. 3d at 163 ("Courts likewise have interpreted [§] 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation.").

But we can leave that regulatory knot for another day. Even assuming § 241.4(l)(1) applies in full force, Ravelo's claim still fails. The regulation demands a prompt interview, not an instantaneous one. Ravelo might well wish the agency had moved with greater urgency. But the Court declines to hold that the December interview was anything less than prompt within the meaning of the regulation. A routine administrative wait does not magically convert a completed interview into a constitutional injury warranting release. *See Teng v. Mukasey*, 516 F.3d 12, 17 (1st Cir. 2008) (providing that "not every procedural misstep or difficulty raises anything like a constitutional difficulty").

13

### D. Count III—INA

Here, Ravelo invokes the Supreme Court's decision in *Zadvydas v. Davis*. (Doc. 1 at 24-30.) The premise of his claim goes like this: *Zadvydas* established a six-month "presumptively reasonable" limit on post-removal-period detention. (*Id.* ¶ 114.) Ravelo points out that he was ordered removed in 1998 and has spent the last 13 years living under an order of supervision. Because he views that supervision as a form of "custody," he argues his six-month clock expired over a decade ago, leaving ICE powerless to detain him now. (*Id.* ¶ 115.)

A bit of statutory plumbing helps set the stage. When a removal order becomes final, the INA starts a 90-day clock. 8 U.S.C. § 1231(a). During that window, the government must keep the noncitizen detained. *Id.* § 1231(a)(2). If that initial period expires without a successful removal, the government has a choice: it may release the individual on supervision or keep them locked up. *Id.* § 1231(a)(6). Read literally, the statute places no outer limit on that continued confinement. But holding someone indefinitely is a constitutional non-starter. So the Supreme Court read a practical limitation into the text. The government, the Court held, may only detain a noncitizen for a period "reasonably necessary" to actually bring about their removal. *Zadvydas*, 533 U.S. at 701. And to give lower courts a workable yardstick, the Court drew a line at six months: any post-removal detention lasting six months or less is

"presumptively reasonable." *Id.* "In order to state a claim under *Zadvydas*," then, "the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

Apply that framework here, and Ravelo's claim immediately runs into a math problem: he simply has not been detained long enough. To trigger a *Zadvydas* inquiry, a noncitizen must be physically confined for more than six months. Ravelo, however, has only been detained since October 30—leaving him well short of that half-year mark. *See, e.g.*, *Rivera v. Hassell*, No. 4:15-01497-WMA-SGC, 2016 WL 4257692, at *3 (N.D. Ala. July 12, 2016) (finding the petitioner's removal period began to run when he was taken into ICE custody, not the day his removal order became final).

To bridge the gap, Ravelo argues that the thirteen years he spent living in the community under an order of supervision should count toward the six-month clock. But that argument fundamentally conflates two different kinds of custody. It may be true that being subject to an order of supervision places enough restraints on a person's movement to satisfy the "in custody" requirement for filing a habeas petition. *See Romero v. Sec'y, U.S. Dep't of Homeland Sec.*, 20 F.4th 1374, 1379 (11th Cir. 2021). *Zadvydas*, however, was not concerned with getting through the courthouse doors. It was aimed

at the severe, physical deprivation of liberty that comes from sitting in a jail cell indefinitely. The six-month clock measures actual lockup, not supervised freedom. *See, e.g.*, *Ghamelian v. Baker*, No. CV SAG-25-02106, 2025 WL 2049981, at *4 (D. Md. July 22, 2025), *Guerra-Castro v. Parra*, No. 1:25-CV-22487, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025).

Because Ravelo has not been physically detained for six months, his *Zadvydas* claim fails. *See Lopez v. Dir. of Enf't & Removal Operations*, No. 3:25-CV-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026), *Guerra-Castro*, 2025 WL 1984300, at *4 (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

### E. Count IV—Administrative Procedures Act

That brings us to Ravelo's penultimate claim, brought under the Administrative Procedure Act. Quoting the APA's familiar standard, he asks the Court to set aside his revocation as "arbitrary and capricious" under 5 U.S.C. § 706. The difficulty here is twofold. First, Ravelo has brought this claim in a habeas petition, which is the wrong vehicle for the job. As mentioned, the writ of habeas corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL (CDB), 2026 WL 507542, at *3 (D. Ariz. Feb. 24,

2026), *Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026); *see also Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

But even if we overlook that procedural mismatch, Ravelo's APA claim fails on its face because it is entirely empty. He asserts that ICE "failed to articulate any reasoned explanation" for departing from its regulations, but he does none of the work to back that up. (Doc. 1 at 31.) Simply reciting the APA's "arbitrary and capricious" standard and gesturing at a regulatory citation is not a legal argument. A petitioner cannot just allege a violation and leave it to the Court to connect the dots. Because his claim is completely conclusory and undeveloped, it would otherwise fail. *See Handley v. Werner Enters., Inc.*, No. 7:20-CV-00235 (WLS), 2022 WL 630239, at *2 (M.D. Ga. Mar. 3, 2022) ("Litigants must do more than merely raise an issue in a perfunctory manner, without supporting arguments and citation to authorities[.]").

### F. Count V—Due Process

Finally, we arrive at Count Five. Ravelo alleges his continued detention violates Due Process because it serves no legitimate purpose, insisting once again that his removal is not reasonably foreseeable. (Doc. 1 at 31-34.) Strip

17

away the constitutional labels, though, and this claim is just a rerun of the arguments the Court has already dismissed. The baseline reality remains unchanged: the Government possesses the clear, statutory authority to detain him. 8 U.S.C. § 1231. And as the Supreme Court made clear in *Zadvydas*, the agency gets a presumptively reasonable six-month runway to actually effectuate that removal. *Dominguez v. Warden, Baker Corr. Inst.*, No. 3:26-CV-197-WWB-MCR, 2026 WL 482404, at *1 (M.D. Fla. Feb. 20, 2026). Because Ravelo is still well within that six-month window, he is jumping the gun. The Government has time left on the clock to show his removal is viable. Until that period expires, his detention remains lawful. *See Rivera-Amador v. Rhoden*, No. 3:25-CV-1460-WWB-SJH, 2025 WL 3687452, at *2 (M.D. Fla. Dec. 19, 2025).

### III. Conclusion

In the end, Ravelo's petition tries to stretch both the law and the calendar further than they can go. He demands strict adherence to internal bureaucratic housekeeping rules that offer no substantive constitutional protection. He asks this Court to run a six-month detention clock for over a decade while he lived out in the community. And he attempts to wave away the Government's clear statutory authority to detain him now that his removal is allegedly on the horizon. The law simply does not work that way. Because ICE acted within its discretion, provided the necessary process, and

has not exceeded the presumptively reasonable timeframe for detention, Ravelo is not entitled to habeas relief at this time.

Accordingly, it is now **ORDERED**:

1.      Ravelo's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED** without prejudice.

2.      The Clerk of Court is **DIRECTED** to enter judgment accordingly, deny any pending motions as moot, and close this case.

**ENTERED** in Fort Myers, Florida on March 2, 2026.


Kyle C. Dudek
United States District Judge

19